SKYLINE HOMES, INC. *vs.* COMMONWEALTH.

Norfolk.   October 3, 1972. — December 6, 1972.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & KAPLAN, JJ.

*Damages,* Eminent domain.   *Value.   Eminent Domain,* Damages.
*Evidence,* Of value.

In a proceeding to determine just compensation for a parcel taken by
   eminent domain, the trial judge was warranted in excluding evi-
   dence of the parcel's potential use as a source of loam where the
   town zoning by-law barred such a use, except by a special permit,
   and the landowner introduced no evidence of a reasonable prospect
   that the bar would soon be lifted.   [685–686, 687–688]
Discussion of when potential uses can be considered in fixing just
   compensation for land taken by eminent domain.   [686–688]

PETITION filed in the Superior Court on September 15,
1967.

The case was tried before *Kalus,* J.

*Edward F. Newell* for the plaintiff.

*Garrett H. Byrne, Jr.,* Assistant Attorney General
(*Kevin P. Curry,* Assistant Attorney General, with him)
for the Commonwealth.

KAPLAN, J.   In January, 1965, the petitioner purchased
about 200 acres of unimproved land located on the east-
erly and westerly sides of Pond Street in Franklin, Nor-
folk County.   The area, in a rural setting with scattered
houses, was zoned primarily for residential use.   In Sep-
tember, 1965, the Commonwealth acting through the De-
partment of Public Works took a portion of the petition-
er's land for highway purposes (Route 495): 12.58 acres
for the highway proper, and an easement on 2.32 acres
to provide for the relocation of Mine Brook.   The effect
of this taking for the highway was to cut off a triangular
piece of 6.6 acres from the rest of the petitioner's prop-

erty, and to flood to some extent a piece of about 6.9 acres and render it difficult of access. The particular land taken or affected was low lying and of doubtful suitability for housing; the higher ground owned by the petitioner remains available for that purpose.

This petition for assessment of damages for the land taken and for injury caused to the two other areas was brought in 1967. The case was tried in April, 1970, and the jury brought in a verdict of $7,940. The petitioner's substitute outline bill of exceptions (excluding points abandoned through the petitioner's failure to argue them in its brief) asserts that the trial judge committed error in striking from the record and excluding from the jury's consideration evidence as to a possible use of the land for the removal and sale of loam and peat. Related to this is claimed error in the judge's refusal to give certain instructions to the jury. Error is also claimed in the court's exclusion of questions put to the building inspector of the town of Franklin.

At trial the petitioner introduced a good deal of evidence as to the adaptability of the land to the loam business — its "highest and best use," according to the petitioner — including evidence about the quantities of earth products that were present and could be removed and marketed. Much of this evidence was received de bene esse pending proof of a right to exploit the loam despite the zoning of the area as residential.

Section V–F (1) of the zoning by-law of the town of Franklin as it stood in 1965 prohibited the removal from any premises of more than ten cubic yards of sod, loam, or other earth products in any one year except when incidental to and in connection with the construction of a building or the like, and "except where such removal may be authorized by a special permit issued by the Board of Appeals." The petitioner first asserted that he had bought from his predecessor a permit for removing loam, and then that he had gotten oral permission from the board of appeals, but it finally appeared and is now

conceded that he had no special permit as called for in the by-law.[1]

Use of this land for the loam business having thus been shown to be prohibited rather than specially permitted, the judge was right to strike the testimony about that use and to instruct the jury to disregard it, unless the petitioner's fallback argument is accepted, namely, that removal of loam might have become a permissible use at some date after the taking and that that prospect should be taken into account as a factor in determining value at the time of taking.

It is true that, with discounts for the likelihood of their being realized and for their futurity, the values of potential uses of land taken are elements that should be considered by the trier in fixing just compensation. *Tigar* v. *Mystic River Bridge Authy.* 329 Mass. 514, 517–519. *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Authy.* 335 Mass. 189, 193–194. *Southwick* v. *Massachusetts Turnpike Authy.* 339 Mass. 666, 670. *Olson* v. *United States*, 292 U. S. 246, 255. See Orgel, The Law of Eminent Domain (2d ed. 1953) §§ 28–31 (discussing at § 30 the concept of the "highest and best" use); Nichols, Eminent Domain (Rev. 3d ed.) § 12.314, and authorities cited at n. 1, pp. 12–189 through 12–201. To be excluded from the calculation, however, are possible uses that are unduly speculative or conjectural. *Tigar* v. *Mystic River Bridge Authy., supra*, at 518–519. *Southwick* v. *Massachusetts Turnpike Authy., supra*, at 670. See Orgel, The Law of Eminent Domain, *supra*, § 31; Nichols, Eminent Domain, *supra*, § 12.314, and authorities cited at n. 2, pp. 12–201 through 12–205. It is conceived that such remote uses

---

[1] There was testimony that the petitioner's predecessor had conducted a loam business on the premises but it was not contended that this exempted the land from the permit requirement under a provision of the by-law which on certain conditions allowed continuance of earth removal activities in lawful operation when the by-law was adopted. There was also some evidence that the petitioner himself had made a sizeable sale of loam after acquiring the property. This appears to have been simply illegal and was in any event without significance for the present problem. See *Joly* v. *Salem*, 276 Mass. 297, 302–303.

would not figure materially in the reckonings of the willing buyer and seller, envisaged as intelligent business people expecting to pay and receive hard cash. Cf. *United States* v. *Miller,* 317 U. S. 369, 374–375; *State* v. *Gorga,* 26 N. J. 113, 116. Moreover, the trier needs protection against being diverted by farfetched hypotheses as to future uses. *H & R Corp.* v. *District of Columbia,* 351 F. 2d 740, 742 (D. C. Cir.). Whether a particular use, seen as from the time of the taking, was so likely to eventuate and so imminent as to deserve being taken into account, is a matter for demonstration, not mere guesswork, see *Brush Hill Dev. Inc.* v. *Commonwealth,* 338 Mass. 359, 361–364; *State* v. *Gorga, supra,* at 116; *Hietpas* v. *State,* 24 Wis. 2d 650, 657, and the judge has a margin of ultimate discretion in deciding whether the proof has gone far enough to warrant submission of the issue to the jury. *Aselbekian* v. *Massachusetts Turnpike Authy.* 341 Mass. 398, 400–401. *State* v. *Gorga, supra,* at 117.

The fact that a use was prohibited by law at the time of the taking does not prevent its consideration if there was then a reasonable prospect that the bar would soon be lifted — a matter for proof. This applies to zoning restrictions and the like. *Wenton* v. *Commonwealth,* 335 Mass. 78, 82. *Lee* v. *Commonwealth,* 361 Mass. 864. *Wolff* v. *Commonwealth of Puerto Rico,* 341 F. 2d 945, 946–947 (1st Cir.). *Government of the Virgin Islands* v. *2.7420 Acres of Land,* 411 F. 2d 785, 786–787 (3d Cir.). See Nichols, Eminent Domain, *supra,* § 12.322 [1], and authorities cited at n. 6, pp. 12–394 through 12–403. But in the present case evidence was altogether lacking that the by-law restriction would be overcome so that sale of loam could be undertaken. The petitioner did not present evidence tending to show, for example, that, judging from past experience in similar situations, a special permit would probably be granted by the board of appeals. *Government of the Virgin Islands* v. *2.7420 Acres of Land, supra,* at 786. *United States* v. *Certain Land in Baltimore County, Md.* 209 F.

Supp. 50, 52–55 (D. Md.). Indeed, nearly the only definite piece of relevant evidence that can be found in the record is the fact that in the spring of 1965 the petitioner actually made formal application to the board of appeals for a special permit under the by-law and it was denied. The petitioner did not attempt to show, as on occasion condemnees have done, that the zoning classification was one that itself contemplated change, *Wolff* v. *Commonwealth of Puerto Rico, supra,* at 946–947, or that surrounding land had changed sharply in character and use and that nearby parcels had been rerezoned in consequence, *United States* v. *Meadow Brook Club,* 259 F. 2d 41, 44–45 (2d Cir.), cert. den. 358 U. S. 921; *People ex rel. Dept. of Pub. Works* v. *Donovan,* 57 Cal. 2d 346, 352–353; *Snyder* v. *Commonwealth,* 412 Pa. 15, 18; *Hunt* v. *Director of Pub. Works for R. I.* 99 R. I. 111, 114–115, or that a comprehensive town plan proposed a zoning change for the parcel in question, *Budney* v. *Ives,* 156 Conn. 83, 86–87, or that the report of a zoning advisory council recommended a change in zoning of similar land, *H & R Corp.* v. *District of Columbia,* 351 F. 2d 740, 743–744 (D. C. Cir.). It is by no means sufficient to show merely that land is suited to a given use which, however, is prohibited by law. Cf. *Cameron Dev. Co. Inc.* v. *United States,* 145 F. 2d 209, 210 (5th Cir.). The cases relied on by the petitioner [2] do not help it, for they assume that a predicate must be laid for proof of the value of a future use in the form of a showing as to its likelihood and lawfulness.

The evidence tendered by the petitioner about the availability of the land for removal of loam was without such a predicate, and was rightly struck. As to the petitioner's tendered instructions, so far as refused they were inapposite for the same reason. [3]

---

[2] *Tigar* v. *Mystic River Bridge Authy., supra; Wenton* v. *Commonwealth, supra; Brush Hill Dev. Inc.* v. *Commonwealth, supra;* and *Ford* v. *Worcester,* 339 Mass. 657.

[3] Thus one instruction requested and refused would have required the jury to consider a possible future use without a showing that the use was likely. The other instruction would have called on the jury to

Questions put to the building inspector of the town of Franklin about the provision of the by-law permitting removal of loam and other earth products when incidental to the construction of buildings or the like [4] were properly excluded. Not only were the questions in part at least legal questions, they were distant from the controversy, for the petitioner was itself insisting that the land involved was not suitable for housing development.

*Exceptions overruled.*

consider all uses to which the land might be profitably applied; the judge limited this proposition appropriately in his charge.

[4] Section V–F (1) of the by-law allowed removal of earth products "when incidental to and in connection with the construction of a build-- ing or street or other activity authorized by . . . [the] by-law as interpreted by the building inspector . . . ."