McHugh, J.
1. Motion for Summary Judgment (Paper No. 29)
The Motion is DENIED.
There is a genuine issue of material fact as to the meaning and scope of the 1963 opinion letter, as to the degree of care with which it. was drafted and as to nature of the task Rackeman, Sawyer and Brewster (“Rackeman”) was asked to undertake.
As to Rackeman’s activities in 1989, two fact-bound principles preclude summary judgment. First, an attorney’s duty of loyalty to a former client encompasses work done by the attorney on behalf of the former client. See Pisa v. Commonwealth, 378 Mass. 724, 726 (1979); NFC, Inc. v. General Nutrition, Inc., 562 F.Supp. 332, 333-34 (D.Mass.1983). An attorney therefore is generally precluded from attacking opinions earlier rendered to client A during that attorney’s later representation of client B. Pisa v. Commonwealth, supra at 726; NFC, Inc. v. General Nutrition, Inc., supra at 333-34; United States v. Standard Oil Co., 136 F. Supp. 345, 356 n.13 (S.D.N.Y. 1953); Thatcher v. United States, 212 F. 801, 812 (6th Cir. 1914).
“The rationale for this prohibition is twofold. First, [and perhaps inapplicable here,] adverse subsequent representation entails a risk that the former client’s interests could be jeopardized by disclosure or misuse of its confidential communications. Second [and independent] , for a lawyer to switch sides on the same or a related controversy would create an appearance of impropriety and serve to undermine the public’s confidence in the integrity of the legal profession.” NFC, Inc. v. General Nutrition, Inc., supra, 562 F.Supp. at 333. Accordingly, subsequent adverse representation has been prohibited regardless of whether or not the attorney received client confidences in the first representation. Id. at 334. Indeed, in United States v. Standard Oil Co., supra 136 F.Supp. at 359 n.24, the United States District Court for the Southern District of New York noted that an attorney may not attack the validity of the attorney’s own work and that an attorney who has drawn a document or advised a client to take a certain legal position “is forever barred from asserting that that position was unsound or that document invalid.” See also Pisa v. Commonwealth, supra 378 Mass. at 726; In re Michal, 112 N.E.2d 603, 606 (Ill. 1953).[1]
A second fact-based principle precluding summary judgment with respect to Rackeman’s 1989 activities concerns Rackeman’s duty of loyalty to GTE arising from Rackeman’s representation of GTE in 1989 on matters unrelated to the option. “The undivided loyalty that a lawyer owes to his clients forbids him, without the clients’ consent, from acting for client A in one action and at the same time against client A in another.” McCourt Co., Inc. v. FPC Properties, Inc., 386 Mass. 145, 146 (1982). Under the Canons of Ethics, a *395 lawyer cannot continue multiple employment if the exercise of the lawyer’s independent professional judgment in behalf of a client will be or is likely to be adversely affected by the lawyer’s representation of another client, or it if would be likely to involve the lawyer in representing differing interests, unless the client consents after full disclosure. DR5-105(B); DR5-105(C); Wellman v. Willis, 400 Mass. 494, 500 (1987); McCourt Co., Inc. v. FPC Properties, Inc., supra at 152. There is no question that Rackeman simultaneously represented GTE and NEIC at the time it counseled NEIC against agreeing to GTE’s exercise of its option. The record contains no suggestion that Rackeman obtained the consent of either.
Whether and to what extent Rackeman’s 1989 actions, considered against the backdrop of the Canons just described, fell below the standards of professional care required of an attorney in 1989 and, if so, whether any damage to GTE resulted are disputed issues of fact. Indeed, the latter question is as hotly contested as the former. Because there are disputed issues of fact, however, summary judgment is inappropriate.
2. Motion in Limine
Rackeman moves, in limine, for an order excluding any expert testimony concerning the existence of ethical violations on Rackeman’s part. Rackeman claims that ethical violations do not give rise to private claims and that, in any event, expert testimony on the subject of whether an ethical violation occurred is inadmissible. That Motion, too, is DENIED but a limiting instruction will be given to the jury at the time the testimony is presented.
It is true that a violation of a canon of ethics is not itself an actionable breach of an attorney’s duty to a client. Nevertheless, if the ethical or disciplinary rule allegedly violated was intended to protect one in the client’s position, a violation of the canon may be some evidence of the attorney’s negligence. Fishman v. Brooks, 396 Mass. 643, 649 (1986). See generally Cimino v. Milford Keg Inc., 385 Mass. 323, 327 (1982).
Expert testimony is, of course, generally necessary to establish the standard of care to which an attorney is held. Colucci v. Rosen, Goldberg, Slavet, Levenson & Wekstein, 25 Mass.App.Ct. 107, 111 (1987). An expert on the attorney’s duty of care property could base her opinion on the attorney’s failure to conform to a disciplinary rule. Fishman v. Brooks, supra, 396 Mass. at 650. Generally, expert testimony concerning the fact of an ethical violation is inadmissible. Id at 656. The judge can and should instruct the jury concerning what the ethical and disciplinary rules require and the jury can then decide for itself whether the rules were violated. See generally, e.g., Corsetti v. The Stone Company, 396 Mass. 1, 12 & n.9 (1985); DiBiase v. Town of Rowley, 33 Mass.App.Ct. 928, 929 (1992) (rescript); Welch v. Keene Corp., 31 Mass.App.Ct. 157, 165 (1991).
To be sure, in Fishman v. Brooks, supra, 396 Mass. at 650, the Supreme Judicial Court stated that, the foregoing principles to the contrary notwithstanding, “an expert on the duty of care of an attorney property could base his opinion on an attorney’s failure to conform to a disciplinary rule.” The practice to which the Court was referring is more fully explained in Simon v. Solomon, 385 Mass. 91, 105 (1982). There, the Supreme Judicial Court held that a statement by an expert witness called to testify about the level of the plaintiffs emotional distress that, upon examination, the plaintiff appeared to be “sincere and honest” was admissible solely as an explanation of the basis of the expert’s opinion. Simon v. Solomon, supra at 104-05. The judge instructed the jury that they alone were responsible for determining the truth of the parties’ allegations and they should consider the expert’s comments on truthfulness only as evidence of the process by which he had formed his opinion and the facts on which he had relied in doing so. Id. at 104 & n.5. The Court went on to say that an expert may state otherwise inadmissible grounds on which he had relied in forming an opinion as part of the foundation for his testimony if those statements are cabined by limiting instructions and are presented to the jury in a manner that avoids prejudice. Id. at 105. See also DiBiase v. Town of Rowley, 33 Mass.App.Ct. 928, 929 (1992) (rescript).
When Fishman is read against the backdrop of Simon, it seems clear that expert testimony concerning ethical violations in a legal malpractice case is admissible where the expert opinion seeks to establish the standard of care to which an attorney is to be held and the expert bases her opinion on the attorney’s failure to conform to a disciplinary rule. The jury is to be instructed that the expert’s testimony concerning the rule violation should be considered only as evidence of the process by which the expert had formed her opinion and the facts on which she had relied, not to show the truth of those facts. Cf. Commonwealth v. Baptiste, 372 Mass. 700, 708 n.1 (1976). In addition, the jury must be instructed that it is to decide the question of the presence or absence of an ethical violation for itself and, before the expert’s testimony is allowed, the record must contain evidence from which the jury could conclude that the defendant in fact violated the rule in question.

 A third rationale for the prohibition, also seemingly inapplicable here, focuses on protection of the current client. An attorney clearly has an obligation to exercise professional judgment within the bounds of the law “solely for the benefit of his client and free of compromising influences and loyalties." Pisa v. Commonwealth, supra, 378 Mass. at 726. In the attorney’s later representation of a client with interests adverse to those of the former client, there should be no possibility that the attorney’s current loyalties are diluted by lingering loyalty to the original client or by self-interested desire to uphold the soundness of the advice given to that former client. Id